IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIAM H. TANKERSLEY,

        Petitioner,

vs.                             Case No. 3:07cv154/RV/EMT

SCOTT P. FISHER, Warden,

        Respondent.

_____/

## ORDER

This cause comes for consideration upon the magistrate judge's report and recommendation, dated July 12, 2007 (doc. 17) ("Report"). The magistrate has recommended that both William H. Tankersley's petition for habeas corpus and his motion for summary judgment be denied. The petitioner has been furnished a copy of the Report, and he has filed objections pursuant to Title 28, United States Code, Section 636(b)(1) (docs. 18,19). I have made a *de novo* review of his objections.

Also in the Report, the magistrate judge denied the petitioner's Motion for Enlargement on Recognizance, in which the petitioner had argued that he should be released "on recognizance or surety" pending adjudication of his habeas petition. The petitioner now moves separately for reconsideration of the Report to the extent that it denied his motion for release (doc. 23).

## I. BACKGROUND

The convoluted and confusing history of this case is set forth in the Report, and in at least five published opinions, see generally Federal Trade Commission v. Think Achievement Corp., 312 F.3d 259 (7th Cir. 2002); United States v. Tankersley, 296 F.3d 620 (7th Cir. 2002); Federal Trade Commission v. Think Achievement Corp., 144 F. Supp. 2d 1029 (N.D. Ind. 2001); Federal Trade Commission v. Think Achievement Corp., 144 F. Supp. 2d 1013 (N.D. Ind. 2000);

<u>Federal Trade Commission v. Think Achievement Corp.</u>, 144 F. Supp. 2d 993 (N.D. Ind. 2000), but it will aid in the discussion for the relevant background facts to be restated here.

Beginning in September 1991, the petitioner masterminded an elaborate and nationwide telemarketing scheme to defraud persons seeking employment with the United States Postal Service. In February 1998, he and several corporate entities under his direction and control were named as defendants in a civil action filed by the Federal Trade Commission ("FTC"). Summary judgment was eventually granted in favor of FTC in that case. <u>Think Achievement Corp.</u>, *supra*, 144 F. Supp. 2d at 993.[1] While the civil case was still ongoing, the presiding judge (Magistrate Judge Theresa Springmann of the United States District Court for the Northern District of Indiana) entered a restraining order and injunction against the petitioner in order to freeze his assets.[2] The petitioner violated the order and injunction by selling his yacht and attempting to transfer the proceeds to a bank in the Bahamas. For this, he was charged with two counts of criminal contempt. He later pled guilty to the charges and was sentenced to twenty-seven months incarceration. In sentencing him for the criminal contempt, the district court (Judge Rudy Lozano, also of the United States District Court for the Northern District of Indiana) erroneously applied an enhancement for obstruction of justice. <u>Tankersley</u>, *supra*, 296 F.3d at 620. The sentence was eventually reduced to twenty-four months after an appeal.

---

[1] In affirming this disposition on appeal, Circuit Judge Richard Posner noted that "[i]t is rare for a judge to enter summary judgment in favor of the plaintiff in a fraud case, but in this case the evidence was so overwhelming as to justify the district court in dispensing with a trial." <u>Think Achievement Corp.</u>, *supra*, 312 F.3d at 261.

[2] At the beginning of the case, Judge Springmann was a magistrate presiding over the case with consent of the parties under 28 U.S.C. § 636(c)(1). In 2003, while the litigation was still active, she was elevated to district judge.

On October 18, 2000, after summary judgment was granted for FTC in the civil case and as part of a restitution award, Judge Springmann ordered that the petitioner convey all his real and personal property to a receiver and provide other related information. He refused, instead choosing to conceal some of his assets in storage units. Tankersley, *supra*, 296 F.3d at 624. More than three months later, the receiver filed a motion to show cause and argued that the petitioner refused to provide: (1) *his social security number*, (2) *title to all his real and personal property*; and (3) *an accounting for, and repatriation of, his assets held in foreign countries*. The petitioner objected to the October 18th order and motion to show cause, asserting his Fifth Amendment privilege because there was at that time an ongoing grand jury investigation into his potential criminal activity. Judge Springmann directed the parties to submit an "Agreed Protective Order" encompassing the information and assets being sought, which they did, and the court then entered a "Stipulated Protective Order." Because these orders are not part of the record in this proceeding (nor are they available from the online docket), the full extent of protection granted by the orders is unknown at this time. What is known is that the petitioner did not provide the requested information. The district court held that he failed to establish an inability to comply with the October 18th order (impliedly rejecting his Fifth Amendment argument), and it gave him an additional 10 days to provide the information. On February 12, 2001, when the petitioner still continued to make no effort to comply, the district court exercised its authority under Title 18, United States Code, Section 401, and had him charged with, and arrested for, civil contempt. See generally Think Achievement Corp., *supra*, 144 F. Supp. 2d at 1029 (the contempt order); see also 18 U.S.C. § 401 (authorizing district court to order fine and/or imprisonment for "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command"). It does not appear on this record that the petitioner properly challenged the civil contempt charge at that time or at any

time subsequent.[3] He was ordered to be incarcerated until he purged the contempt. Significantly, he was still being held on this civil contempt charge when, on August 31, 2001, he was *originally* sentenced for the criminal contempt charge as discussed above. The district court held a hearing on November 14, 2001, during which it found that the petitioner remained in civil contempt and ordered that the criminal contempt sentence "not begin until defendant has purged himself of contempt by complying with prior court orders." The civil contempt thus tolled the start of his sentence for the criminal contempt.

At some point during this period, the grand jury empaneled to hear evidence relative to the petitioner's criminal activity concluded its term. On July 18, 2001, he was charged in a sixty-count indictment with multiple counts of conspiracy, wire fraud, mail fraud, money laundering, and filing false tax returns. Although the grand jury was concluded, the petitioner continued to refuse to provide information and assets to the receiver because of the pending criminal indictment. He remained incarcerated under the civil contempt for more than two and one-half years.[4]

---

[3] In one of his appeals to the Seventh Circuit, it was noted that the petitioner "attempted to appeal from a judgment for civil contempt entered against him, but that appeal is untimely and is therefore dismissed." Think Achievement Corp., *supra*, 312 F.3d at 261. In a subsequent appeal, the Court of Appeals intimated that the petitioner had abandoned his challenge to the civil contempt. See United States v. Tankersley, 96 Fed. Appx. 419, 421 (7th Cir. 2004) (unpublished) (commenting that the petitioner "[does not] argue that the civil contempt order violated the Fifth Amendment").

[4] Unlike Title 28, United States Code, Section 1826, which provides that a "recalcitrant witness" appearing before any court or grand jury cannot be held in civil contempt for more than 18 months, there is no statutory maximum sentence under Section 401. See United States v. Smith, 248 F.3d 1139 (5th Cir. 2001) (unpublished); United States v. Miller, 588 F.2d 1256, 1262, 1265 (9th Cir. 1978). As will be discussed, there is a question in this case as to whether the petitioner should have been charged with contempt under Section 1826, not Section 401.

On October 8, 2003, after being in contempt for almost thirty-two months, Judge Springmann vacated the civil contempt order so that the petitioner could start serving his criminal contempt sentence. Immediately thereafter, he began serving time for the criminal contempt charge, and he eventually completed that sentence on June 15, 2005. Subsequently, on October 21, 2005, pursuant to a guilty plea, he was sentenced to fifty-seven months incarceration for the underlying criminal charges, with credit for time served as calculated by the Bureau of Prisons. His projected release date is August 4, 2009. But, he argues in his habeas petition that he is entitled to immediate release as he should be given credit for all the time that he was in custody on the civil contempt charge --- that is, the 968 days from February 12, 2001 (when he was arrested for the civil contempt), through October 8, 2003 (when the contempt order was vacated by the court). He argued before the magistrate and in his objections to the Report that it is error to deny him credit for time served on the vacated civil contempt order because it no longer has force or effect, it is a legal nullity, and, therefore, by operation of law, "it never existed." In this context, the petitioner makes much of the fact that Judge Springmann used the word "vacate" as opposed to using another term such as "terminate" or "lift." The petitioner contends that he is entitled to sentencing credit because the time he served under the "nullified" order "has not been credited to any other sentence." The magistrate rejected this specific argument with little discussion, concluding that: "The fact that the civil contempt order was vacated after Petitioner was originally sentenced and resentenced . . . does not change the fact that Petitioner's incarceration from February 12, 2001 to October 8, 2003 was pursuant to a civil contempt commitment order in effect at the time of his sentencing." Report at 7.

## II. DISCUSSION

The primary issue to be resolved in this case is whether the petitioner is entitled to credit for time served under the vacated contempt order. In my view,

resolution of this issue is dependent upon an important and fundamental question not raised or discussed in the Report, that is, was the civil contempt order properly entered against the petitioner in the first place? I cannot, and do not, decide this question on the record as developed, so I must send the case back to the magistrate judge for additional briefing and analysis. For reasons to be discussed, if the civil contempt was improper, then, as a matter of law and fairness, the petitioner should receive sentencing credit for all the time he served in contempt. If the contempt was appropriate, however, then he would not be entitled to such relief. But, even if the civil contempt itself was appropriate, if Judge Springmann used the wrong statutory authority to impose that contempt, then the petitioner should be entitled to partial sentencing credit.

"The Fifth Amendment protects an individual from being compelled to provide testimony that might be self-incriminating. Testimony is not limited to oral declarations, but may include, *inter alia*, the production of documents" and other tangible items. Grand Jury Subpoena Dated April 9, 1996 v. Smith, 87 F.3d 1198, 1200 (11th Cir. 1996) (citations omitted). The very act of production conveys the fact that the item exists --- and that it was in the possession of the witness --- and thus production can have "'communicative aspects of its own.'" See id. (*quoting* Fisher v. United States, 425 U.S. 391, 410, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976)). "Where these communicative acts of production have 'testimonial' value and incriminate the witness, the Fifth Amendment privilege may be invoked." Id. (citing cases). In such a situation, courts cannot use the threat of civil contempt to compel a witness to forfeit his right against self-incrimination. See In re Corrugated Container Anti-Trust Litig., 620 F.2d 1086 (5th Cir. 1980) (vacating civil contempt order where district court improperly entered the order against two witnesses who "legitimately invoked their privilege to remain silent") (binding under Bonner v. City of Pritchard, Alabama, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*)); United

States v. Beckman, 545 F. Supp. 1284 (M.D. Fla. 1982) (observing that where the witness properly invokes his Fifth Amendment privilege, district court "must not hold respondent in civil contempt because his only 'key to the jail' would cause him to sacrifice a constitutionally protected right").

Therefore, assuming for the sake of discussion that the petitioner legitimately invoked his Fifth Amendment rights both while the grand jury was investigating him and, later, while the indictment was pending, it was improper for the district court to enter the contempt order. It would follow therefrom that the petitioner is entitled to credit for the time served under that order. The Seventh Circuit Court of Appeals confronted this situation in an analogous context in United States v. Slaughter, 900 F.2d 1119 (7th Cir. 1990). The defendant in that case pled guilty to tax evasion and dealing in firearms without a license, and he was sentenced to consecutive prison terms. At the sentencing hearing, he was held in civil contempt for refusing to submit to "processing" by the Bureau of Alcohol, Tobacco and Firearms ("ATF"). The district court ordered that the defendant be incarcerated for his contempt and ruled that no jail time served under the contempt order would be credited to his federal sentences until he agreed to be processed by the ATF. On appeal, the Seventh Circuit held that the contempt order had been wrongly entered insofar as "a proper predicate was not laid." Id. at 1127. Because it had been entered in error, the Court of Appeals vacated the civil contempt order. Significantly, in remanding the case, the Court determined that "Slaughter should receive full credit toward his federal sentences for all time served on the vacated contempt order." Id. at 1126. This result is based on common sense and requires little discussion; if a defendant is incarcerated pursuant to an improper or unjust order, then he should receive credit for the time served under that wrongful sentence.

On the other hand, if the petitioner did not have a reasonable and legitimate basis to invoke his Fifth Amendment rights, then he should not get credit for all the

time he was in contempt, *even though the contempt order was eventually vacated*. In reaching this conclusion, it is necessary to look closely at the reason and motivation for why the district court vacated the contempt, and not merely at the fact that the order was "vacated." In lifting the contempt order, Judge Springmann stated:

> There is no dispute by the parties that the Court's contempt order, when it was imposed, was civil, as opposed to criminal, in nature. The sanction imposed was designed to coerce Tankersly [*sic*] into complying with the Court's Order and Tankersly [*sic*] himself was able to purge the contempt and obtain his release by committing an affirmative act, and thus carried the keys of his prison in his own pocket. However, what starts as coercive can over time become punitive. When incarceration for civil contempt ceases to be coercive and becomes punitive, due process considerations oblige a court to release a contemnor from civil contempt.

See Doc. 1, Exhibit 1 at 5-6 (internal citations and quotation marks omitted). The district court went on to note that the petitioner had been incarcerated for more than two and one-half years and had made no effort to purge the contempt. It thus accepted the petitioner's argument that "the contempt has become punitive and criminal because he does not have the ability to purge himself without incriminating himself in the pending criminal proceedings." Id. at 6-7. Under those facts, the district court determined that "the confinement has lost its coercive effect and the Court is obliged to release Tankersly [*sic*] from civil contempt. The Court finds that by virtue of the length of his incarceration and refusal to purge, his steadfast adherence to his Fifth Amendment rights, and the 60-count indictment, Tankersly [*sic*] has met his burden of demonstrating that no realistic possibility of compliance exists." Id. at 7. *It appears, therefore, that the contempt order was not vacated because it was improper, as in Slaughter, supra, but rather it was vacated only when and because the petitioner successfully argued that it ceased to be coercive*.

*Case No. 3:07cv154/RV/EMT*

If the conclusion emphasized above is correct, then the petitioner should not receive credit for the time he served in contempt. As the district court explained, once the civil contempt became punitive, it was *necessary* to vacate or otherwise lift that order so the petitioner could begin serving time for the criminal contempt. See Doc. 1, Exhibit 1 at 2 (stating that the petitioner "cannot begin serving his 24-month criminal contempt sentence until his civil contempt is vacated"); see also id. at 5 n.6 (again stating that "the criminal contempt sentence cannot be served until the civil contempt is vacated by the Court"). The contempt statute at issue in this case [18 U.S.C. § 401] does not set forth a maximum sentence, nor does a sentence imposed under the statute self-terminate. The contempt was open ended.

On this issue, an unpublished district court case out of the Western District of Pennsylvania, and subsequently affirmed by the Third Circuit Court of Appeals, is very much on point. The defendant in Laporta v. Meko, Case No. 96-cv-59E, was convicted and sentenced to a term of incarceration for mail fraud and other charges. He was ordered to testify before a grand jury, but he refused (apparently on Fifth Amendment grounds). The district court entered a civil contempt order and directed that the defendant be incarcerated until he purged the contempt.[5] The district court further ruled that his sentence on the underlying criminal charges would be suspended and held in abeyance until the civil contempt was lifted. The defendant apparently did not challenge the civil contempt order, and he remained incarcerated on that charge for more than one year. Eventually, he persuaded the district court --- as the petitioner did here --- that he would never purge himself of the contempt, so the court "vacated" the contempt order specifically so that he could begin serving his sentence on the criminal charges. The defendant then filed

---

[5] The district court in Laporta exercised its contempt authority under 28 U.S.C. § 1826 and not 18 U.S.C. § 401, but for present purposes, the analysis remains the same.

a habeas petition, arguing that he was entitled to sentencing credit for time served on the vacated contempt charge. The magistrate assigned to the case disagreed and recommended that the petition be denied. The district court later accepted this recommendation, and the defendant appealed.[6]

On appeal to the Third Circuit, the defendant in <u>Laporta</u> advanced almost the exact same, word-for-word arguments that the petitioner advances here. Specifically, he argued that "the vacating of the civil contempt sentence entitles him to post-sentencing credit for all time served on the now vacated contempt." <u>See</u> 1996 WL 33648896, at *1. Relying on the fact that the court unambiguously used the word "vacate," rather than another word with different legal significance, he argued that "[t]o vacate a contempt sentence (or any other sentence) is to eliminate it or render it void." <u>Id.</u> at *2-5. Accordingly, the vacated contempt order had no legal force or effect, and it "totally nullifies the contempt sentence." <u>Id.</u> at *2. Because it was a legal nullity, the defendant further argued, "the contempt sentence never existed and accordingly the time served by the petitioner has to be credited to his criminal sentence." <u>Id.</u> In reply, the government pointed out that, under case and statutory law, civil contempt orders are terminated only upon the occurrence of a particular event, such as the witness purging himself, the end of court proceedings, or the end of a grand jury's term. <u>See</u> 1996 WL 33648895, at *13. "Accordingly, so that the Bureau of Prisons may properly calculate the time for re-commencing an interrupted sentence, the court must vacate the contempt order and indicate the date when the criminal sentence is no longer being held in abeyance." <u>Id.</u> The government explained that there were important policy reasons for not giving sentencing credit in such a situation:

---

[6] Because the district court case is unpublished, the facts described above are taken from the briefs filed by the parties on appeal. <u>See</u> <u>generally</u> 1996 WL 33648896 (appellant's brief); 1996 WL 33648895 (appellee's brief).

> Section 1826(a) [of Title 28, United States Code]
> authorizes the civil confinement of recalcitrant witnesses
> and its purpose is to ". . . secure the testimony through a
> sanction. . . ." Bruno v. Greenlee, 569 F.2d 775, 777 (3d
> Cir. 1978), *quoting* 1970 U.S. Code Congressional and
> Administrative News, p. 4022. The incentive to testify is
> the release from confinement by compliance. To create
> an incentive for an individual already incarcerated, the
> criminal sentence must be interrupted. This gives the
> individual the option to comply and thereby shorten their
> total sentence by testifying and terminating the civil
> sanction. If the criminal sentence is not interrupted, it
> would negate the benefits derived from testifying and
> thus immunize an incarcerated individual from the
> coercive sanctions of Section 1826(a), a result contrary
> to Congressional intent. Bruno at 777, *quoting* Martin v.
> United States, 517 F.2d 906, 908 (8th Cir. 1975).
>
> "(T)he coercion of a Section 1826 would be meaningless
> against prisoners if credit against the original sentence
> must be given for time spent in confinement for civil
> contempt. Certainly the law-and-order spirit which
> motivated Congress to enact Section 1826 would be
> inconsistent with an intention that it provide a remedy
> useless against prisoners." In re Grand Jury Investigation
> (Hartzell), *supra* at 169.
>
> Bruno at 777, *quoting* In re Grand Jury Investigation, 542
> F.2d 166 (3d Cir. 1976).

See 1996 WL 33648895, at *13-14. The government concluded by arguing that,

as in the case *sub judice*, "The order vacating the contempt order did not order that

the time spent under the contempt order be credited to the criminal sentence.

Neither did it nullify the contempt; it merely ended the contempt sentence and

allowed the criminal sentence to begin running again." Id. at *14. The Third Circuit

agreed with the government and affirmed the denial of habeas relief, albeit without

discussion. Laporta v. Meko, 103 F.3d 113 (3d Cir. 1996) (table decision).

*Case No. 3:07cv154/RV/EMT*

Whether the petitioner legitimately invoked his Fifth Amendment rights, and, relatedly, the extent to which <u>Slaughter</u> and <u>Laporta</u>, *supra*, may bear on this case, should be analyzed by the magistrate judge. Resolution of these issues will depend, at least in part, on what the petitioner was ordered to do and what was included in the protective orders. One final issue warrants consideration as well.

There is no question that Judge Springmann intended to, and did, impose civil contempt in this case. The district court said as much in the contempt order, and it is clear that the contempt was solely intended to "coerce" the petitioner into acting, namely, to provide the receiver with the requested assets and information. There is a question, however, as to whether it was proper for the district court to impose civil contempt under 18 U.S.C. § 401, rather than 28 U.S.C. § 1826.[7] It is true that Section 401 authorizes both civil and criminal contempt. <u>See</u>, <u>e.g.</u>, <u>United States v. Baxley</u>, 228 Fed. Appx. 901, 903 (11th Cir. April 24, 2007) (unpublished) (noting that "'violators of [§ 401] may be subject to civil contempt in addition or as an alternative to criminal contempt'") (citation omitted); <u>accord</u> <u>United States v. Powers</u>, 629 F.2d 619, 624 (9th Cir. 1980) ("Section 401 applies

---

[7] For a detailed discussion of the history of, and relationship between, Sections 401 and 1826, <u>see</u> <u>Armstrong v. Guccione</u>, 470 F.3d 89 (2d Cir. 2006). As the Second Circuit explains, courts have long possessed the inherent power to impose contempt. In 1831, Congress enacted the first statute restricting the circumstances under which contempt sanctions could be issued, and these restrictions are today embodied in Section 401. Congress imposed these statutory limits in response to the infamous story of Judge James H. Peck, who once used his contempt authority to place an attorney in jail for 24 hours and remove his right to practice law in federal court for 18 months, all because the attorney had written a newspaper article critical of one of Judge Peck's decisions. Over time the statute was revisited many times, with part of it being re-codified and placed in the Judicial Code, 28 U.S.C. § 385 (1926), and part of it being placed in the Criminal Code, 18 U.S.C. § 241 (1926). Today, Section 401 is found in the Criminal Code, whereas Section 1826 is found in the Judicial Code.

to both criminal and civil contempt. . . "). However, where the contemnor is asked and refuses to provide "information" in a case pending before a court or grand jury, the proper source of civil contempt authority appears to be Section 1826, not 401. That statute provides that confinement shall not exceed the life of the court proceeding or the term of the grand jury, including extensions, "but in no event shall such confinement exceed eighteen months." See 28 U.S.C. § 1826(a)(1)-(2). The petitioner, as has been noted, was incarcerated for almost thirty-two months. On this issue, there are two cases that warrant close review.

First, there is the Sixth Circuit decision in United States v. Mitchell, 556 F.2d 371 (6th Cir. 1977). The district court in that case ordered the defendants to provide voice exemplars, but they refused. Based on their refusal to comply, the court held the defendants in civil contempt, citing Section 401. "No reference was made in the order to the [then recently-enacted] 28 U.S.C. § 1826, which deals with civil contempt for certain specific acts." Id. at 383. The defendants were held in contempt for two years. They argued on appeal that Section 401 only dealt with criminal contempt and Section 1826 "was the proper source of authority." Id. Relatedly, the defendants argued that the civil contempt sentence was invalid to the extent that it exceeded eighteen months. The Sixth Circuit agreed with the latter argument, concluding that, through Section 1826, "Congress imposed an 18-month maximum on the length of confinement for civil contempt." Id. at 385. The Court of Appeals thus invalidated the sentences --- to the extent they exceeded eighteen months --- and gave the defendants sentencing credit for that time served. Id.; cf. In re Grand Jury Proceedings, 541 F.2d 464 (5th Cir. 1976) (defendant held in civil contempt for refusing to provide handwriting exemplars; to the extent that he was kept in contempt beyond the time provided for under Section 1826, the Court of Appeals held that he "shall receive credit on the service of his unrelated criminal sentence") (binding under Bonner, supra, 661 F.2d at 1206).

Case No. 3:07cv154/RV/EMT

Compare <u>Mitchell</u> with <u>Armstrong v. Guccione</u>, 470 F.3d 89 (2d Cir. 2006), a case that appears very similar to the facts here. The defendant in <u>Armstrong</u> controlled several corporate entities and was charged with securities violations, fraud, and money laundering. The district court appointed a receiver to collect the corporate assets, but the defendant refused to comply. Specifically, he refused to turn over rare gold coins, gold bars, and a computer, which totaled approximately fifteen million dollars in corporate assets. He asserted his Fifth Amendment privilege, but the district court rejected the argument; held him in civil contempt under Section 401; and kept him incarcerated for nearly seven years. He eventually filed a habeas petition, arguing, *inter alia*, that "even if he was lawfully held in contempt, the district court's authority to detain him expired long ago." <u>Id.</u> at 100. Relying primarily on <u>Mitchell</u>, the defendant argued that Section 1826 "limited confinement to a maximum duration of eighteen months." <u>Id.</u> The Second Circuit noted that "Congress specifically authorized *indefinite*, coercive civil confinement through the enactment of the provision now codified at 18 U.S.C. § 401." <u>Id.</u> at 105 (emphasis added). The Court of Appeals went on to distinguish <u>Mitchell</u> and explain in detail why the defendant could not take advantage of the eighteen month statutory maximum in Section 1826. Because this analysis is relevant to our case, I will quote extensively from the Second Circuit opinion:

> [28 U.S.C. § 1826] applies only to a witness who "refuses without just cause shown to comply with an order of the court to testify or provide other information." 28 U.S.C. § 1826(a); <u>see also</u> S.Rep. No. 91-617, at 57 (1969) (stating that the statute was intended "to deal with witnesses who are unlawfully withholding information necessary to move forward an investigation"). Armstrong relies on the Sixth Circuit's ruling in <u>United States v. Mitchell</u>, 556 F.2d 371 (6th Cir.1977), to establish that his refusal to comply with the court's order was a refusal to provide information falling within the scope of § 1826(a). His argument fails. In

Mitchell, two indicted defendants were directed by the court to furnish voice exemplars. They had no right under the Fifth Amendment to refuse the order because the giving of voice exemplars is not considered being "a witness against [one]self," as it is not a testimonial act. Id. at 382. The defendants refused to give the exemplars, and after a hearing at which the defendants testified to "their reasons for opposing the order," id. at 381, they were found to be in civil contempt and were confined to coercive confinement. The Sixth Circuit determined that the confinement in excess of eighteen months violated § 1826(a). The court concluded that the order to produce voice exemplars was an order to "provide … information" under the terms of § 1826(a), with the consequence that the defendants were protected by the statute's eighteen-month limitation. In defending the appeal, the government argued that § 1826(a) did not apply because it protected only "witnesses," and the defendants did not fall within that category because they were defendants. The court rejected that contention. The defendants were "in fact acting as 'witnesses' when directed to produce the information, even though the non-testimonial nature of the evidence makes Fifth Amendment protections inapplicable." Id.

Armstrong contends that the reasoning of Mitchell compels the conclusion that the refusal to produce under a court order falls under § 1826(a). His argument is without merit. In order to come within the terms of § 1826(a), a witness must refuse to testify "or provide other information." 28 U.S.C. § 1826(a). The court in Mitchell concluded that the furnishing of a voice exemplar constituted providing "other information" as specified by the statute, see Mitchell, 556 F.2d at 384-85, presumably because the voice exemplars were sought for their informational content and had no other value, see Palmer v. United States, 530 F.2d 787, 789 (8th Cir.1987) (explaining that the ordered production of handwriting exemplars falls under § 1826(a) because "[t]he phrase ['other information'] … would include …

electronically stored information or computer tapes [and] is intended to be comprehensive, including all information given as testimony, but not orally"). *By contrast, the order which Armstrong refused to obey commands the production of gold bullion, valuable coins, and antiquities that are sought not because of any information they might contain, but because they are objects of monetary value that are the property of the corporation in receivership. An order requiring the production of money or valuable property, for the purpose of restoring it to its rightful owner, is not an order to provide "information," and does not fall under the terms of § 1826(a).*

To be sure, the production order also directs Armstrong to produce a computer hard drive, which presumably contains records of the Princeton funds. If Armstrong were being confined solely because of his refusal to produce the computer files, we would need to consider whether the eighteen-month cap of § 1826(a) applies. But until Armstrong produces the gold and the valuable coins and antiquities he is withholding, that issue is a moot point. *His confinement by reason of his contumacious refusal to produce the objects of monetary value does not come within § 1826(a) and is not subject to its eighteen-month limitation*.

Id. at 109-10 (emphasis added).

In sum, if the petitioner here was ordered to provide "other information" that falls within the reach of Section 1826, then he should receive credit for time served beyond eighteen months. Mitchell, *supra*, 556 F.2d at 371. If, on the other hand, he was merely ordered to produce "objects of monetary value that are the property of the corporation in receivership," then he should not receive sentencing credit. Armstrong, *supra*, 470 F.3d at 89. Resolution of this issue will depend, in part, on the precise nature of what the petitioner was ordered to do, a task that cannot be undertaken on the record as presently developed.

## III. CONCLUSION

For these reasons, before it can be determined if the petitioner is entitled to credit for the time served under the vacated contempt order, it must be determined if that order was appropriate in the first place.[8] Even if the civil contempt was appropriate and justified, it must also be determined if Judge Springmann acted properly by invoking the contempt provision of Section 401, and not Section 1826. To the extent that Section 1826 should have been used, the petitioner is entitled to sentencing credit for time served beyond eighteen months. The magistrate judge should consider and have the parties brief these issues. The magistrate should also reconsider the petitioner's Motion for Enlargement on Recognizance as appropriate. If it appears there is a reasonable likelihood of success on the merits, the petitioner should be released pending adjudication of his habeas petition.

This case is hereby referred back to the magistrate judge for review and analysis consistent with this order.

**DONE AND ORDERED** this 12th day of October, 2007.

/s/ Roger Vinson_____
**ROGER VINSON**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[8] In vacating the civil contempt, Judge Springmann seemed to imply that the petitioner had, indeed, properly invoked his Fifth Amendment rights. See Doc. 1, Exhibit 1 at 7 ("The Court believes that a reasonable possibility of compliance exists in the future, after the determination of the criminal charges;" but until then, there is no possibility of compliance given the petitioner's "steadfast adherence to his Fifth Amendment rights"). I note, however, that even if the civil contempt order ran afoul of the Fifth Amendment, if the petitioner never challenged the order --- and it at least *appears* that he did not, see note 3, *supra* --- it is possible that he has waived the argument.

*Case No. 3:07cv154/RV/EMT*