IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


WILLIAM H. TANKERSLEY,
       Petitioner,

vs.                                 Case No.  3:07cv154/RV/EMT

SCOTT P. FISHER, Warden,
       Respondent.
_____/

### REPORT AND RECOMMENDATION

      This matter was referred to the undersigned by the District Judge for further consideration of Petitioner's habeas petition in light of supplementation of the record and the parties' supplemental briefs on several issues.  Upon consideration of the parties' submissions, it is the opinion of the undersigned that the habeas petition should be denied.

I.      BACKGROUND

      Beginning in September 1991, Petitioner masterminded an elaborate and nationwide telemarketing scheme to defraud persons seeking employment with the United States Postal Service. *See* United States v. Tankersley, 296 F.3d 620, 621 (7th Cir. 2002).  In February of 1998, he and several corporate entities under his direction and control were named as defendants in a civil action filed by the Federal Trade Commission ("FTC") in the United States District Court for the Northern District of Indiana.  *See* F.T.C. v. Think Achievement Corp., 144 F. Supp. 2d  993, 997 (N.D. Ind. 2000).  While the civil case was pending, the presiding judge entered a restraining order and injunction against Petitioner in order to freeze his assets.  *See id.*; *see also* Tankersley, 296 F.3d at 621.  Petitioner violated the order and injunction by selling a yacht and attempting to transfer the proceeds to a bank in the Bahamas; therefore, on November 18, 1999, Petitioner was charged in the United States District Court for the Northern District of Indiana with two counts of criminal

contempt (*see* Doc. 36, <u>FTC v. Think Achievement Corp.</u>, Case No. 2:99cr181-RL (N.D. Ind.), Doc. 1).

On September 29, 2000, and October 18, 2000, summary judgment was granted for the FTC in the civil case (*see* Doc. 36, <u>FTC v. Think Achievement Corp.</u>, Case No. 2:98cv12-TLS (N.D. Ind.) Doc. 524).   In the October 18 order, the court entered judgment against Petitioner in the amount of $28,149,600.00 for consumer redress and payment of any attendant expenses of administering a redress fund (*id.* at 20).   The court also ordered Petitioner to provide his social security number to a court appointed Receiver (Receiver) for the purpose of collecting the civil judgment (*id.* at 21).   The court further ordered Petitioner to turn over title to all real and personal property to the Receiver, and provide an accounting of all assets in foreign countries and repatriate and turn over those assets to the Receiver (*id.* at 22).

On December 18, 2000, Petitioner pleaded guilty to the criminal contempt charges, and a sentencing hearing was set for May 10, 2001 (*see* Doc. 36,  <u>FTC v. Think Achievement Corp.</u>, Case No. 2:99cr181-RL (N.D. Ind.), Doc. 57).

On January 4, 2001, the Receiver filed a Motion to Show Cause and for Certification of Facts based upon Petitioner's refusal to provide the following:  (1) his social security number, (2) title to all of his real and personal property; and (3) an accounting for, and repatriation of, his assets held in foreign countries (*see* Doc. 36, <u>FTC v. Think Achievement Corp.</u>, Case No. 2:98cv12-TLS (N.D. Ind.) Doc. 555).  A hearing on the Receiver's motion was held on January 30, 2001, which Petitioner attended with counsel for both the civil case and Petitioner's related criminal contempt case (*id.*, Doc. 567).  Petitioner objected to the October 18 order and the Receiver's motion to show cause, asserting his Fifth Amendment privilege as to some of the information he was directed to provide to the Receiver because there was at that time an ongoing grand jury investigation into his potential criminal activity (*id.*, Doc. 578 at 7).  The court ordered Petitioner to fully comply with the October 18 order by February 8, 2001; specifically, the court ordered Petitioner to furnish his social security number to the Receiver, to turn over title to all real and personal property to the Receiver, and to provide an accounting of, and repatriate and turn over to the Receiver all foreign assets (*see id.*, Doc. 567, Doc. 570 at 2).  To facilitate Petitioner's compliance with the October 18 order, in light of Petitioner's claim of privilege with regard to some of the information, the court directed the parties

to submit a proposed form of Agreed Protective Order by February 5, 2001, with regard to certain information, disclosures, and accountings which Petitioner claimed were protected by privilege (*id.*, Doc. 567, Doc. 570 at 2, Doc. 578 at 7).

On February 5, 2001, the court entered a Stipulated Protective Order, signed by Petitioner's counsel, which provided that any information disclosed by Petitioner to the Receiver which referred or related to any asset (whether located in or outside the United States) held by Petitioner, for his benefit, or under his direct or indirect control, including but not limited to all assets placed in trust by or for Petitioner, was deemed "Protected Information"  (*see* Doc. 36, FTC v. Think Achievement Corp., Case No. 2:98cv12-TLS (N.D. Ind.), Doc. 570 at 2).  The Protective Order further provided that such information included, but was not limited to, writing or recordings, photographs, and transcripts of oral testimony (*id.*).  The Protective Order mandated that the parties not voluntarily disclose any protected information except to "qualified persons," including certain agents of the FTC, agents of counsel for the parties, agents of the Receiver, and the court and court personnel (*id.* at 3), unless a party was court-ordered to do so or required to do so pursuant to "lawful compulsory process" (*id.*).  The Protective Order set forth additional directives with regard to the protected information, including limitations on the copying of such information, the requirement that protected information be clearly marked as confidential, and limitations on who would have access to the information (*id.* at 3–4).  The Protective Order specifically provided that the parties were not precluded from using protected information in the course of any deposition, provided that the confidentiality of the information was protected as set forth in the order (*id.* at 4–5).

Notwithstanding the Protective Order, Petitioner failed to turn over to the Receiver title to all real and personal property owned by him, failed to provide the Receiver with an accounting of all foreign assets, and failed to repatriate and turn over those foreign assets to the Receiver; therefore, on February 9, 2001, the Receiver filed an Ex Parte Motion to Enforce Immediate Sanctions and a Petition for Writ of Execution, Writ of Assistance, and Hold Harmless Agreement (*see* Doc. 36, FTC v. Think Achievement Corp., Case No. 2:98cv12-TLS (N.D. Ind.), Docs. 572, 573).  The same day, the district court found that as of February 9, 2001, Petitioner knowingly violated the October 18, 2000 and January 29, 2001 orders, and that he failed to establish his inability to comply with those orders; therefore, the court found that Petitioner continued to be in

contempt of court (*id.*, Doc. 578 at 1–8).  The court also found that a fine was an inadequate means of enforcing the court's orders; therefore, pursuant to 18 U.S.C. § 401, the court ordered Petitioner imprisoned until such time as he purged himself of the contempt, noting that at the January 29, 2001 hearing, Petitioner did not object to imprisonment as a possible sanction for his contempt nor did he propose an alternative sanction (*id.* at 8).

On February 28, 2001, Petitioner's counsel filed a Motion to Reconsider or in the Alternative to Stay, in which he asked the court to reconsider or stay the February 9 contempt order on the following grounds: (1) that the act of producing a document had communicative aspects and was privileged for Fifth Amendment purposes where it involved testimonial self-incrimination; (2) criminal prosecution of Petitioner was pending based upon Petitioner's hiding and/or destroying assets; (3)  substantial amounts of financial information seized by the Receiver and shared with the FTC found its way to the Department of Justice; (4) the protective order would not prevent subsequent demand for and disclosure of information to the Department of Justice; and (5) unless the court granted Petitioner complete assurance that he would not be prosecuted for any crimes involving the topic of disclosure, Petitioner's Fifth Amendment rights protected him from disclosure of information (*see* Doc. 36, FTC v. Think Achievement Corp., Case No. 2:98cv12-TLS (N.D. Ind.), Doc. 582).  On March 2, 2001, Petitioner's counsel filed a Motion for Hearing on Contempt Citation for Opportunity for Defendants to Purge or Reaffirm the Fifth Amendment Rights (*id.*, Doc. 583).

A hearing was held on April 18, 2001, but proceedings were held only as to Petitioner's co-defendant because Petitioner's counsel withdrew from representation (*see* Doc. 36, FTC v. Think Achievement Corp., Case No. 2:98cv12-TLS (N.D. Ind.), Doc. 609).  The court stated that a contempt hearing as to Petitioner would be re-set after thirty (30) days to allow Petitioner to obtain counsel (*see id.*, Doc. 609).  On June 19, 2001, at a hearing on a different matter, Petitioner, proceeding pro se, made an oral motion to withdraw his Motion for Reconsideration of Contempt, but the court withheld ruling on the motion to withdraw until a hearing on August 13, 2001, at which time the court would seek clarification of the status of Petitioner's legal representation (*see id.*, Doc. 617).  On August 13, 2001, the court set a hearing on the contempt issue for October 4, 2001, which was subsequently re-set for November 14, 2001.  *See* FTC v. Think Achievement Corp., Case No. 2:98cv12-TLS (N.D. Ind.), docket entries 634, 638).

At some point during this period, the grand jury empaneled to hear evidence relative to Petitioner's criminal activity concluded its term.  On July 18, 2001, Petitioner was charged in a sixty-count indictment with multiple counts of conspiracy, wire fraud, mail fraud, money laundering, and filing false tax returns.  *See* United States v. Tankersley, 96 Fed. Appx. 419, 421 (7th Cir. May 12, 2004).  Although the grand jury was concluded, Petitioner continued to refuse to provide information and assets to the Receiver because of this pending criminal indictment.

Petitioner was still being held on this civil contempt charge when, on August 31, 2001, he was sentenced on the criminal contempt charges to two concurrent terms of twenty-seven (27) months of imprisonment, to be followed by a five-year term of supervised release (*see* Doc. 36, FTC v. Think Achievement Corp., Case No. 2:99cr181-RL (N.D. Ind.), Docs. 83, 87).  Petitioner appealed his sentence on the following grounds: (1) the district court erroneously declined to reduce his sentence by two levels for acceptance of responsibility; (2) the district court erred when it enhanced his sentence for substantially interfering with the administration of justice; and (3) the district court erred when it enhanced his sentence for obstructing the administration of justice.  *See* United States v. Tankersley, 296 F.3d 620 (7th Cir. 2002).  The appellate court affirmed his sentence in part and vacated and remanded in part.  *Id.*  Upon resentencing, Petitioner's sentence was reduced to two concurrent terms of twenty-four (24) months of imprisonment, to be followed by a three-year term of supervised release (*see* Doc. 36, FTC v. Think Achievement Corp., Case No. 2:99cr181-RL (N.D. Ind.) Docs. 98, 99, 102).

The district court in the civil case held a hearing on the contempt issue on November 14, 2001, at which Petitioner was represented by counsel (*see* Doc. 36, FTC v. Think Achievement Corp., Case No. 2:98cv12-TLS (N.D. Ind.), Doc. 646).  The court found that Petitioner remained in contempt and denied Petitioner's motion to reconsider the February 9, 2001 contempt order (*id.*).  Petitioner filed a notice of appeal of the contempt order, but the Seventh Circuit dismissed the appeal as untimely.  *See* F.T.C. v. Think Achievement Corp., 312 F.3d 259, 261 (7th Cir. 2002) (". . . he [Petitioner] has also attempted to appeal from a judgment for civil contempt entered against him, but that appeal is untimely and is therefore dismissed.").

On July 3, 2003, Petitioner's counsel filed a Motion to Vacate Contempt Order on the ground that the civil contempt order had lost its coercive effect and become punitive in nature due to

Petitioner's steadfast assertion of his Fifth Amendment rights regarding the pending criminal charges for conspiracy, wire fraud, mail fraud, money laundering, and filing false tax returns in United States v. Tankersley, Case No. 2:01cr122-ALS (*see* Doc. 36, FTC v. Think Achievement Corp., Case No. 2:98cv12-TLS (N.D. Ind.), Docs. 730, 740).   Petitioner contended that the civil contempt order would remain punitive until his Fifth Amendment concerns were alleviated by a final disposition in the criminal case (*id.* at 740).[1] On October 8, 2003, after being in contempt for almost thirty-two months, the district court vacated the civil contempt order so that Petitioner could start serving his criminal contempt sentence (*see* Doc. 36, FTC v. Think Achievement Corp., Case No. 2:98cv12-TLS (N.D. Ind.), Doc. 743).   The order of the district court set forth the basis for vacating the contempt order as follows:

> The Court believes that a reasonable possibility of compliance [with the court's October 18, 2000 order] exists in the future, after the determination of the criminal charges.   Until that time, however, the confinement has lost its coercive effect and the Court is obliged to release Tankersly [sic] from civil contempt.   The Court finds that by virtue of the length of his incarceration and refusal to purge, his steadfast adherence to his Fifth Amendment rights, and the 60-count indictment, Tankersly [sic] has met his burden of demonstrating that no realistic possibility of compliance exists.   Although there is a determinable future time in which this will cease to be true—after a resolution of the criminal charges—this date is uncertain.   Rather than hold Tankersly [sic] in contempt in the interim, the Court will grant Tanerksly's [sic] Motion to Vacate Contempt Order.   The parties have not presented any authority prohibiting this action, nor has the Court found any.   The Court's October 18 Order is still valid and enforceable and the FTC and Receiver are not precluded from seeking enforcement of this Order in the future.

(Doc. 36, FTC v. Think Achievement Corp., Case No. 2:98cv12-TLS (N.D. Ind.), Doc. 743).

Immediately after the district court vacated the civil contempt order, Petitioner began serving time for the criminal contempt charges, and he eventually completed that sentence on June 15, 2005.   Subsequently, on October 21, 2005, pursuant to a guilty plea, he was sentenced to fifty-seven (57) months of incarceration for the fraud, money laundering, and tax charges, with credit for time served as calculated by the Bureau of Prisons.   *See* United States v. Tankersley, Case No. 2:01cr122-ALS

---

[1]Petitioner challenged his criminal indictment on double jeopardy grounds.   *See* United States v. Tankersley, No. 2:01cr122-ALS (N.D. Ind.), Doc. 82.   The trial judge rejected his claim, and Petitioner appealed the decision.   *See id.*, Docs. 100, 102, 103.   Petitioner's criminal trial date was continued pending the outcome of the appeal.   *See id.*   The appellate court affirmed the district court decision, and the mandate issued June 4, 2004.   *See id.*, Doc. 123.

(N.D. Ind.), Doc. 162.[2]  The Judgment and Commitment Order was silent on the issue of whether Petitioner was entitled to sentence credit for time served on the civil contempt (*see id.*), but in the district court's Sentencing Memorandum, the sentencing judge expressly denied Petitioner's request for such "credit" through a downward departure under section 5G1.3 of the United States Sentencing Guidelines.  *See id.*, Doc. 160 at 14–17.[3]  The docket of the criminal case shows that Petitioner did not directly appeal his judgment of conviction or sentence, nor did he filed a motion to vacate under 28 U.S.C. § 2255, and Petitioner does not allege that he did so.[4]  Petitioner's projected release date is August 4, 2009 (*see* Doc. 49 at 4).

In the instant habeas action, Petitioner challenges the federal Bureau of Prison's (BOP) failure to award credit on his current sentence for the time he spent in custody on the civil contempt order (that is, 968 days from February 12, 2001 to October 8, 2003), which was subsequently vacated by the district court on October 8, 2003.  Petitioner argues that because the civil contempt order was vacated, it was a nullity and never existed; therefore, the BOP administrative rules precluding sentence credit for time spent incarcerated on the civil contempt commitment do not apply, and he is entitled to sentence credit under the plain language of 18 U.S.C. § 3585(b) (*see* Doc. 1, supporting memorandum at 2–3; Doc. 12 at 2–4).  Additionally, Petitioner argues that the BOP's failure to award sentence credit violates his constitutional rights to due process and equal protection (*see* Doc. 1, supporting memorandum at 4; Doc. 12 at 5–8).

The undersigned initially issued a Report and Recommendation recommending that the habeas petition be denied on the grounds that Petitioner failed to show that the BOP's sentence calculation was based upon an arbitrary, capricious, or unreasonable interpretation of 18 U.S.C. § 3585(b); he failed to show he had a liberty interest in the sentence credit; and he failed to show that similarly situated inmates were treated differently than him (*see* Doc. 17).  The District Judge determined that further development of the record was necessary, as well as further briefing by the

---

[2]A copy of the Judgment is attached to this Report and Recommendation.

[3]A copy of the Sentencing Memorandum is attached to this Report and Recommendation.

[4]Although Petitioner filed an interlocutory appeal challenging the district court's denial of his motion to dismiss the indictment on the ground that it violated double jeopardy principles, *see* United States v. Tankersley, 96 Fed. Appx. 419 (7th Cir. 2004), Petitioner did not appeal the final judgment of conviction and sentence.

parties on specific issues; thus, the case was remanded to the undersigned for further review and analysis (*see* Doc. 24).  The undersigned then issued an order directing Respondent to supplement the record with relevant portions of the record from Petitioner's civil and criminal cases in the Northern District of Indiana, and requiring the parties to file supplemental briefs addressing several issues (Doc. 29).  The parties have submitted their supplemental materials, and the case is now ready for disposition.  Upon review of the supplemental record and consideration of the parties' argument on the issues identified above, the undersigned concludes: (1) the civil contempt order was vacated not because it was improperly entered, but because the contempt order had lost its coercive effect; (2) Petitioner did not properly challenge the civil contempt order; (3) Petitioner waived the argument that the contempt order violated his Fifth Amendment rights by failing to properly challenge the order; (4) Petitioner has failed to show cause for the waiver; and (5) the BOP's denial of sentence credit did not violate the plain meaning of 18 U.S.C. § 3585 and did not constitute a violation of Petitioner's due process or equal protection rights.

## II.    STANDARD OF REVIEW

A habeas corpus petition under 28 U.S.C. § 2241 generally attacks only the <u>execution</u> or carrying out of an initially valid confinement.  *See* <u>Broussard v. Lippman</u>, 643 F.2d 1131 (5th Cir. Unit A Apr. 27, 1981).[5]  By contrast, to challenge on constitutional grounds the <u>imposition</u> or <u>validity</u> of his conviction or sentence, Petitioner must file an application under 28 U.S.C. § 2255. *See* <u>United States v. Hayman</u>, 342 U.S. 205, 72 S. Ct. 263, 96 L. Ed. 232 (1952).

Acting through the BOP, the federal Attorney General initially possesses the exclusive authority to compute sentence credit awards after sentencing.  <u>Rodriguez v. Lamar</u>, 60 F.3d 745, 747 (11th Cir. 1995).  Once a petitioner has exhausted his administrative remedies within the BOP, the district court may review the constitutionality of the Bureau's decision and its statutory construction. *Id.*  The court's analysis, however, is deferential—if the language of the applicable statutory provision clearly outlines its congressional purpose, an interpreting court and administrative agency "must give effect to the unambiguously expressed intent of Congress."  If the statute is silent or

---

[5]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

ambiguous, however, a reviewing court must defer to an agency's reasonable interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* (citing <u>Chevron USA Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842–844, 104 S. Ct. 2778, 81 L. Ed.2d 694 (1984)).

III.     ANALYSIS

Initially, it is helpful to clarify the sentence on which Petitioner may seek credit.  Petitioner's sentence on the criminal contempt charges in Case No. 2:99cr181-RL (N.D. Ind.) was completed on June 15, 2005; therefore, any claim of sentence credit as it relates to that sentence is moot.  *See* <u>Graham v. United States Parole Comm'n</u>, 732 F.2d 849, 850 (11th Cir. 1984) (dismissing habeas petition as moot where petitioner ultimately sought release on parole and was released during pendency of habeas action) (quotations omitted).  The only federal sentence which Petitioner is currently serving is his sentence on the fraud, money laundering, and tax charges; therefore, Petitioner may seek credit on that sentence.

The parties do not dispute that the offense conduct underlying the fraud, money laundering, and tax charges occurred after November 1, 1987.  Therefore, prior custody credit is governed by 18 U.S.C. § 3585(b).  That section provides:

> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585.  Thus, as the Supreme Court has held, the BOP determines whether the defendant should receive credit for time spent in custody before the sentence commenced in accordance with Section 3585(b).  *See* <u>United States v. Wilson</u>, 503 U.S. 329, 337, 112 S. Ct. 1351, 117 L. Ed. 2d 593 (1992) (BOP determines credit issues, not the district courts).  Also relevant is 18 U.S.C. § 3584(a), which provides that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."  18 U.S.C. § 3584(a).

The BOP is vested with the authority to interpret and implement these statutory provisions for purposes of sentence computation.  *See* Wilson, 503 U.S. at 337.  Toward that end, the BOP promulgated regulations specifically addressing the relationship between civil contempt commitment orders and criminal sentences.  *See* 28 C.F.R. 522.11 (2000).  This regulation provided, in relevant part:

> (e)(1)  If a civil contempt commitment order is in effect when a criminal sentence of imprisonment is imposed under 18 U.S.C. Chapter 227 (as applicable to offenses committed before November 1, 1987), the criminal sentence runs concurrently with the commitment order unless the sentencing judge orders otherwise.
>
> (2)  If a civil contempt commitment order is in effect when a criminal sentence of imprisonment is imposed under 18 U.S.C. Chapter 227 (as applicable to offenses committed on or after November 1, 1987), the criminal sentence runs consecutively to the commitment order unless the sentencing judge orders otherwise.

28 C.F.R. 522.11(3) (2000).

The BOP's program statements also address the relationship between civil contempt commitment orders and criminal sentences as follows:

> Time spent serving a civil contempt sentence prior to trial and/or sentencing does not constitute presentence time credit toward the sentence that is eventually imposed.
>
> Time spent serving a civil contempt sentence does not constitute presentence time credit toward any criminal sentence that has been interrupted by, or that is running along concurrently with, or that is to be served consecutively to, the criminal sentence.

Department of Justice, Federal Bureau of Prisons Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984), pp. 1-15A–1-16 (Feb. 14, 1997).

The proper method for challenging the BOP's failure to award sentence credit under § 3585 is a habeas petition under § 2241.  *See* Ochoa v. Untied States, 819 F.2d 366 (2nd Cir. 1987) (reviewing habeas petitioner's challenge to United States Parole Commission's failure to grant credit, pursuant to 18 U.S.C. § 3568 (repealed effective Nov. 1, 1987, Pub.L. 98-473, TiT. II, §§ 212(a)(2), 235(a)(1), 98 Stat. 1987, 2031 (1984), as amended, and reenacted in part as 18 U.S.C. § 3585, effective Nov. 1, 1987, by the same legislation), for time he had spent in jail in civil

contempt under 28 U.S.C. §  1826 in connection with the same refusal to testify that formed the basis of criminal contempt charge under 28 U.S.C. § 401, but not reviewing validity of civil contempt order or criminal contempt conviction); Laporta v. Meko, 103 F.3d 113 (3d Cir. 1996) (Table) (affirming denial of § 2241 petition challenging BOP's denial of sentence credit under § 3585 for civil contempt commitment, but not reviewing validity of civil contempt order) (parties appellate briefs at 1996 WL 33648896, 1996 WL 33648895).

        As the District Judge noted in the order referring this case to the undersigned, if the record demonstrates that the civil contempt order "was not vacated because it was improper, . . . but rather it was vacated only when and because the petitioner successfully argued that it ceased to be coercive," then Petitioner should not receive credit for the time served in contempt (*see* Doc. 24 at 8–9).  Upon review of the supplemented record and the parties' briefs, the undersigned concludes that the record demonstrates that the civil contempt order was not vacated because it was improper. The record demonstrates that the civil contempt court vacated its contempt order because the confinement had lost its coercive effect, not because the finding of contempt or the sanction of imprisonment was improper, as evidenced by the aforementioned excerpt from the order vacating the civil contempt order:

> The Court believes that a reasonable possibility of compliance [with the court's October 18, 2000 order] exists in the future, after the determination of the criminal charges.  Until that time, however, the confinement has lost its coercive effect and the Court is obliged to release Tankersly [sic] from civil contempt.  The Court finds that by virtue of the length of his incarceration and refusal to purge, his steadfast adherence to his Fifth Amendment rights, and the 60-count indictment, Tankersly [sic] has met his burden of demonstrating that no realistic possibility of compliance exists.  Although there is a determinable future time in which this will cease to be true—after a resolution of the criminal charges—this date is uncertain. Rather than hold Tankersly [sic] in contempt in the interim, the Court will grant Tanerksly's [sic] Motion to Vacate Contempt Order.  The parties have not presented any authority prohibiting this action, nor has the Court found any.  The Court's October 18 Order is still valid and enforceable and the FTC and Receiver are not precluded from seeking enforcement of this Order in the future.

Doc. 36, FTC v. Think Achievement Corp., Case No. 2:98cv12-TLS (N.D. Ind.), Doc. 743 (emphasis added).  Thus, the order vacating the contempt order did not nullify the contempt; it merely ended the civil contempt sentence and allowed the criminal contempt sentence to commence.

Additionally, the record conclusively establishes that the sentencing court that sentenced Petitioner to the term of imprisonment he is now serving did not award, or intend to award, "credit," by virtue of a downward departure under United State Sentencing Guideline § 5G1.3, on Petitioner's sentence for the time he was incarcerated on the civil contempt commitment.  Therefore, this case is not a situation where the BOP miscalculated the sentence by misinterpreting an order of the sentencing court, as was the case in <u>Delestre v. Pugh</u>, 196 Fed. Appx. 75 (3d Cir. 2006).

Furthermore, to the extent Petitioner attempts to challenge the imposition or validity of the civil contempt order in this habeas proceeding, he may not do so.  The proper method for challenging the validity of the civil contempt order was a direct appeal of that order to the appropriate federal court of appeals, in this case the United States Court of Appeals for the Seventh Circuit.  *See* 28 U.S.C. § 1291; <u>In re Grand Jury Proceedings, United States v. Thurmond</u>, 534 F.2d 41, 42 (5th Cir. 1976); <u>In re Grand Jury Proceedings, United States v. Marshall</u>, 532 F.2d 410, 411–12 (5th Cir. 1976); <u>United States v. Slaughter</u>, 900 F.2d 1119 (7th Cir. 1990).  A habeas petition under § 2241 is not a substitute for direct appeal, and a challenge to a civil contempt order which could have been raised on direct appeal is not actionable in a habeas action and should be considered barred from review.  *Cf.*  <u>Bousley v. United States</u>, 523 U.S. 614, 612, 118 S. Ct. 1604, 1610, 140 L. Ed. 2d 828 (1998) (challenge to criminal conviction or sentence which could have been raised on direct appeal is generally not actionable in a section 2255 motion and will be considered procedurally barred); <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994) (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); <u>United States v. Frady</u>, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).  Absent a showing that the ground of error was unavailable on direct appeal, this habeas court should not consider the ground in a Section 2241 petition unless Petitioner establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error.  *Cf.* <u>Bousley</u>, 523 U.S. at 622 (citations omitted).

In the instant case, Petitioner concedes that he attempted to appeal the civil contempt order, but the Seventh Circuit dismissed his appeal as untimely (*see* Doc. 50 at 55, 57–58).  *See* <u>F.T.C. v. Think Achievement Corp.</u>, 312 F.3d 259, 261 (7th Cir. 2002) (". . . he [Petitioner] has also attempted to appeal from a judgment for civil contempt entered against him, but that appeal is untimely and

is therefore dismissed.").  By failing to properly appeal the propriety of the civil contempt order, Petitioner waived his right to challenge the propriety of that order, including his claims that the civil contempt order ran afoul of the Fifth Amendment, and the civil contempt was properly brought under Section 1826 instead of Section 401.  Furthermore, Petitioner has failed to show cause for his failure to properly challenge the civil contempt order.  Petitioner asserts that the reason for his untimely appeal was the fact that he was proceeding pro se at that time and was legally unsophisticated and misunderstood the appellate rules (*see* Doc. 50 at 58).  It is well established in several circuits, including the Eleventh Circuit, that a litigant's pro se status in a proceeding in which he has no constitutional right to counsel does not constitute cause to excuse a procedural default.  *See* Smith v. Newsome, 876 F.2d 1461, 1465 (11th Cir. 1989) (failure to act or think like a lawyer does not constitute cause); Harmon v. Barton, 894 F.2d 1268, 1275 (11th Cir. 1990) (pro se status in underlying proceedings does not constitute cause unless defaulted claim raises issue that was "intrinsically beyond [a] pro se petitioner's ability to present"); McCoy v. Newsome, 952 F.2d 1252, 1258 (11th Cir. 1992) (same).  In the instant case, the factual and legal bases for Fifth Amendment and statutory challenges to the civil contempt order were plainly available to Petitioner at the time he attempted to appeal that order.  Furthermore, this is not a case where the defaulted claims raise issues that were intrinsically beyond Petitioner's ability to present; indeed, the Fifth Amendment challenge to the contempt order was set forth in the Motion to Reconsider filed by Petitioner's counsel prior to his withdrawal from representation (*see* Doc. 36, FTC v. Think Achievement Corp., Case No. 2:98cv12-TLS (N.D. Ind.), Doc. 582).  Petitioner having failed to show cause for his failure to properly challenge the civil contempt order on direct appeal, the undersigned concludes that Petitioner waived his right to challenge the district court's imposition of civil contempt under Section 401, including the issues of whether the civil contempt order ran afoul of the Fifth Amendment and whether the civil court erred by imposing the contempt under Section 401 instead of Section1826.

Having concluded that the record demonstrates that the civil contempt order was not vacated because it was improper, but rather it was vacated only when and because Petitioner successfully argued that it ceased to be coercive, and that Petitioner waived his right to challenge the contempt, the remaining issue is whether the BOP's decision to deny sentence credit was based upon an

arbitrary, capricious, or unreasonable interpretation of 18 U.S.C. § 3585(b), or that the decision violated his due process or equal protection rights.

As previously noted, Section 3585(b) allows credit for time spent in official detention prior to the date a sentence commences only where the detention resulted from "the offense for which the sentence was imposed," or from "any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed." A civil contempt confinement is not within these categories. *See* Ochoa, 819 F.2d at 371–72; 28 C.F.R. 522.11(3) (2000); BOP Program Statement 5880.28. Furthermore, in the court's Sentencing Memorandum in the criminal fraud and money laundering case, the court expressly denied Petitioner's request to "credit" his sentence with the time he spent in civil contempt commitment. *See* United States v. Tankersley, Case No. 2:01cr122, Doc. 160. Therefore, Petitioner has failed to show that the BOP's refusal to award prior custody credit for the 32-month period he was incarcerated for civil contempt is based upon an arbitrary, capricious, and unreasonable interpretation of 18 U.S.C. § 3585(b).

In his Section 2241 petition, Petitioner also claims that the BOP treated him differently than similarly situated inmates by failing to award sentence credit for the period he was incarcerated pursuant to the civil contempt order (Doc. 1 at 4, supporting memorandum at 4). He contends that the fact that the civil contempt order was vacated replaced his status as a contemnor with the status of every other inmate spending presentence time in detention; yet the BOP granted the other inmates sentence credit, and denied him credit without a rational reason (*id.*). To the extent Petitioner argues he has a liberty interest in the sentence credits and was deprived of that interest without due process of law, his claim is without merit in light of the fact that he has failed to establish he was entitled to receive sentence credit for the thirty-two (32) months he was incarcerated pursuant to the civil contempt order, as discussed *supra*.

Likewise, Petitioner's equal protection claim is without merit. The Equal Protection Clause is implicated in "class of one" claims, the type of claim alleged by Petitioner, "'where the [petitioner] alleges that [ ]he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir.), *cert. denied*, 127 S. Ct. 559 (2006) (citation omitted). "A showing that two [persons] were similarly situated requires some specificity." *Id.* The Eleventh Circuit has

cited with approval the decision of <u>Racine Charter One, Inc. v. Racine Unified School Dist.</u>, 424 F.3d 677 (7th Cir. 2005), which concluded that "[t]o be considered 'similarly situated,' comparators must be prima facie identical in all relevant respects." <u>Racine</u>, 424 F.3d at 680 (quoted in <u>Campbell</u>, 434 F.3d at 1314).  In the instant case, Petitioner has failed to show that he was treated differently from inmates who were "prima facie identical in all relevant respects" because he does not allege that any other inmate serving a criminal sentence for offenses committed after November 1, 1987 was incarcerated pursuant to a civil contempt commitment order, had his civil contempt commitment order vacated on grounds that did not impugn the validity of the contempt order, and received sentence credit from the BOP for the time spent in civil commitment or was allowed to serve his criminal sentence concurrently with the civil contempt commitment without an order from the criminal sentencing judge directing such.  Therefore, Petitioner has failed to establish an equal protection violation.

Accordingly, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this <u>14th</u> day of January 2008.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE  JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Any objections to these proposed findings and recommendations must be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**